UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| COMPLAINT OF | * | Case No. 1:13-cv-2018-JFM |
| J. KENNETH GEIF AND MARY F. GEIB, | | |
| 341 Copley Drive | * | |
| Lancaster, Pennsylvania 17601 | | |
| FOR EXONERATION OR LIMIATION | * | In Admiralty |
| OF LIABILITY | | |

\* \* \* \* \* \* \* \* \* \* \*

## MOTION TO DISMISS COMPLAINT OF J. KENNETH GEIB AND MARY F. GEIB FOR EXONERATION OR LIMITATION OF LIABILITY

Bernadette M. Jeandell, Ralph P. Short, Jr., and Cassandra L. Foster ("Claimants"), by and through their attorneys, Paul D. Bekman and Salsbury, Clements, Bekman, Marder & Adkins, L.L.C., hereby move to dismiss the complaint of J. Kenneth Geib and Mary F. Geib ("Petitioners") For Exoneration or Limitation of Liability, and, in support thereof, states as follows:

1. This Court lacks subject matter jurisdiction because Petitioners failed to timely file their complaint within six months of receiving Claimants' written notice of claim as provided for in 42 U.S.C. § 30511.

**WHEREFORE**, the Claimants respectfully requests that this Court dismiss Petitioners' complaint and dissolve its order staying all of other suits.

_____
PAUL D. BEKMAN
SALSBURY, CLEMENTS, BEKMAN,
   MARDER & ADKINS, L.L.C.
300 W. Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633

*Attorney for Claimants*

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| COMPLAINT OF | * | Case No. 1:13-cv-2018-JFM |
| J. KENNETH GEIF AND MARY F. GEIB, | | |
| 341 Copley Drive | * | |
| Lancaster, Pennsylvania 17601 | | |
| FOR EXONERATION OR LIMIATION | * | In Admiralty |
| OF LIABILITY | | |

\* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT OF J. KENNETH GEIB AND MARY F. GEIB FOR EXONERATION OR LIMITATION OF LIABILITY**

Bernadette M. Jeandell, Ralph P. Short, Jr., and Cassandra L. Foster ("Claimants"), by and through their attorneys, Paul D. Bekman and Salsbury, Clements, Bekman, Marder & Adkins, L.L.C., hereby move to dismiss the complaint of J. Kenneth Geib and Mary F. Geib ("Petitioners") For Exoneration or Limitation of Liability, and, in support thereof, states as follows:

**I.     STATEMENT OF FACTS**

At approximately 12:30 a.m., on June 20, 2010, the Claimants were passengers on a 2006 Lowe motorboat driven by Defendant Ebon Hassan Johnson along the North East River. At the same time, Petitioners were anchored in their 1987 Wellcraft motorboat without proper lighting, horns, and other warning devices. Due to this lack of proper lighting, Defendant Johnson collided with Petitioners' boat causing serious and permanent injuries to the Claimants.

Following the collision, on December 8, 2010, the Claimants, through their attorney, sent written notice of their claim against the Petitioners to the Petitioners' Insurance Company, FAM&M Insurance. *See* Exhibit 1. The written notice informed the Petitioners that the Claimants had retained legal counsel to represent them in a negligence action against the

1

Petitioners, that the Claimants had sustained serious and permanent injuries, and that the notice was a claim for damages.

On January 13, 2011, an insurance claims adjuster, on behalf of the Petitioners, replied to the December 8th letter in which she described Petitioners as "our insureds" and denied liability on their behalf. *See* Exhibit 2. A copy of this letter was sent directly to the Petitioners. Yet, it was not until two-and-a-half years later, on July 12, 2013, that Petitioners filed their complaint for exoneration or limitation of liability.

## II. ARGUMENT

Under Maritime law, the owner of a vessel is permitted to limit any potential liability to the value of the vessel and its pending freight. *See In re Complaint of Salty Sons Sports Fishing, Inc.*, 191 F. Supp. 2d 631, 633 (D. Md. 2002). This right is provided for in 42 U.S.C. § 30511, which states:

> The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter. The action must be brought within 6 months after a claimant gives the owner written notice of a claim.

42 U.S.C. § 30511(a). To be effective, therefore, the Petition for Limitation of Liability must be filed within six months of written notice of a claim. If a Petition is filed after six months, it is considered untimely and must be dismissed for lack of subject matter jurisdiction. *See, e.g., Complaint of Peter Kiewit Sons' Co.*, 1979 A.M.C. 1091, 1095 (D. Md. 1979) ("the purpose of sec. 185 is to cut down the right of the shipowner to limit his liability, and the time limits imposed should be strictly enforced."); *see also In re Marquette Transp. Co.*, 2013 A.M.C. 77, 84 (E.D. La. 2012); *In re Complaint of Stair*, 2008 A.M.C. 867, 870 (W.D. Wash. 2008).

In this case, Claimants provided written notice to Petitioners on December 8, 2010. *See* Exhibit 1. Thus, if Petitioners desired to limit their liability, they were required to file the proper

2

Petition by June 8, 2011. The Petitioners did not file their Petition until over two years later, on July 12, 2013, and therefore, this Court lacks subject matter jurisdiction and must dismiss the petition as untimely. *See In re Marquette Transp.*, 2013 A.M.C. at 86 (explaining that an untimely petition "must be dismissed for lack of subject matter jurisdiction and the stay order must be dissolved").

### A. Claimants' Letter of December 8, 2010 Satisfies the Requirements of Written Notice

Although the statute clearly requires written notice to trigger the six-month limitation period, it does not specifically define what constitutes "written notice of a claim." *See Salty Sons*, 191 F. Supp. 2d at 633. Thus, courts have been left to fashion their own tests for judging the sufficiency of the written notice. In so doing, "the courts take a broad approach when determining whether the vessel owner was on sufficient notice." *Stair*, 2008 A.M.C. at 870. To this end, two tests have developed within the case law, and this Court looks to both when determining whether the written notice is sufficient to begin the six-month limitation period. *See Salty Sons*, 191 F. Supp. 2d at 634.

#### 1. The Richardson Factors

The first test that has developed in the case law has become known as the "*Richardson*" factors, in which a court will examine "whether the letter (1) informs the vessel owner of claimant's demand of a right or supposed right, (2) blames the vessel owner for any damage or loss, or (3) calls upon the vessel owner for something due claimant." *Id.* (citation and quotation marks omitted). Under this test, "federal district courts should not have a narrow application of the '*Richardson*' factors, but rather they must look at the 'whole tenor' of a letter and/or correspondences when determining whether it constituted notice." *Stair*, 2008 A.M.C. at 871.

3

Applying this test, Claimants' December 8th letter satisfied the *Richardson* factors. The letter stated that (1) Claimants had retained legal counsel to represent them against Petitioners; (2) Claimants had "sustained serious and permanent injuries" caused by Petitioners; (3) alleged a negligence cause of action against the Petitioners; (4) described Petitioners' negligence as anchoring their vessel without proper lighting; (5) stated that the alleged negligence occurred on June 20, 2010; (6) explained that the alleged negligence occurred in Oyster Shell Cove; and (7) demanded that Petitioners pay damages for Claimants serious injuries. *See* Exhibit 1.

Taking a "broad approach" to examining the "whole tenor" of this December 8th letter, as this Court is required to do, it is clear that Petitioners received written notice of a negligence claim against them for anchoring their boat in Oyster Shell Cove on June 20, 2010 without proper lighting. The December 8th letter clearly informed Petitioners of Claimants' right, blamed Petitioners for the damage, and called upon Petitioners to pay for the damage. Thus, the *Richardson* factors were sufficiently satisfied to begin the six-month limitation period beginning December 8, 2010.

*See, e.g., Stair*, 2008 A.M.C. at 870-72 (stating that an attorney's letters to an insurance company satisfied *Richardson* factors and sufficiently gave written notice of a claim); *Complaint of Beesley's Point Sea-Doo, Inc.*, 956 F. Supp. 538, 543-44 (D.N.J. 1997) (same).

### 2. *The Reasonable Possibility Standard*

The second test that has developed in the case law states that the "[n]otice will be sufficient if it informs the vessel owner of an actual or potential claim which may exceed the value of the vessel." *Doxsee Sea Claim Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994) (citations omitted). Under this test, "the fact that the amount of damages are uncertain does not prevent the running of the limitations period if it appears 'reasonably possible' that the amount of damages

4

may exceed the value of the owner's ship." *See Salty Sons*, 191 F. Supp. 2d at 634. This is because, as courts have explained, the "reasonable possibility" standard is "not particularly stringent." *In re Eckstein Marine Service L.L.C.*, 672 F.3d 310, 312 (5th Cir. 2012).

Thus, "a claimant need not prove or even specifically allege that his damages will exceed the value of the vessel in order to trigger the six month deadline." *Id.* at 314. Instead, the claimant only needs to raise the possibility that the claim will exceed the value of the boat. And, "[o]nce a reasonable possibility has been raised, it becomes the vessel owner's responsibility to initiate a prompt investigation and determine whether to file a limitation action." *Id.* In other words, if "there is uncertainty as to whether a claim will exceed the vessel's value, the reasonable possibility standard places the risk and the burdens associated with that risk on the owner . . . since he may institute a limitation proceeding even when the total amount claimed is uncertain." *Id.* at 313; *see also In re Hawaiian Watersports, LLC*, 2008 A.M.C. 1382, 1387 (D. Haw. 2008) ("It is the vessel owner's burden 'to seek clarification' regarding the amount of damages sought" because "[t]he six-month period gives vessel owners time to investigate whether the amount of the claim or other claims likely to be the subject of litigation may exceed the value of the vessel.").

When the written notice does not allege a specific amount of damages, courts often look to the seriousness of the alleged injuries and compare them to the value of the vessel. If the injuries appear serious, and the value of the boat is relatively low, then courts will often find that the notice satisfies the reasonable possibility standard. In *Stair*, for example, the court explained that, "While the claimant did not expressly tell the Plaintiff that the value of her claim would exceed the value of the vessel, there was a reasonable probability that her claim would in fact exceed the value, given that she suffered a traumatic injury which resulted in lower leg

5

amputation." 2008 A.M.C. at 871. In *Hawaiian Watersports* the court explained that because the decedent died as a result of the kayaking trip, the owner "should have been on notice that any potential claim relating to the death of Decedent would obviously exceed the value of the $750 kayak at issue and therefore require affirmative steps to limit its liability." 2008 A.M.C. at 1386. Likewise, when serious injuries are alleged, the notice is generally considered sufficient to at least trigger the owner's burden of conducting an investigation, and therefore, begin the six-month limitation period. *See, e.g., Eckstein Marine*, 672 F.3d at 315 ("Because his complaint alleging catastrophic and permanent injuries raised at least a reasonable possibility that his claim might exceed the value of the *St. Andrew*, it was Marquette's responsibility to conduct an investigation, and to file a limitation action within six months if it wanted to avail itself of that statute's generous protection."); *see also Marquette Transp.*, 2013 A.M.C. at 88.

Applying this test, Claimants' December 8th letter satisfied the reasonable possibility standard. The letter clearly stated that both claimants had "sustained serious and permanent injuries." *See* Exhibit 1. And, according to the Petitioners' Complaint, their Wellcraft motorboat was worth no more than $5,000. *See* Complaint at 3. When two different individuals both claim that they have suffered serious and permanent injuries, there is a reasonable possibility that the sum of those claims will be far more than $5,000. Thus, Petitioners should have known on December 8th that the value of the two claims were likely to exceed the value of their boat.

Indeed, even if Petitioners were uncertain as to whether the claims would exceed the value of their vessel, the reasonable possibility standard clearly places the burden on Petitioners to undertake an investigation into the matter. This is sufficient to satisfy the reasonable possibility standard. Thus, given the serious nature of the alleged injuries and the relatively low value of the vessel in question, the Claimants' December 8th letter raised a "reasonable

6

possibility" that the claims would exceed the value of the boat sufficient to begin the six-month limitation period.

### B.  FAM&M Insurance Company, as Petitioners' Agent, was Authorized to Accept the Notice on Their Behalf

To avoid the repercussions of their untimely Petition, Petitioners may try to argue that the notice is ineffective because Claimants sent it to Petitioners' insurance company and not to Petitioners directly. This argument, however, is unavailing. As the courts have now firmly established, "It is settled that a notice of claim may be received by an agent of the vessel owner." *Doxsee Sea Clam*, 13 F.3d at 553 (citing *Diamond v. Beutel*, 247 F.2d 604, 607 (5th Cir. 1957)). In so doing, an agent may properly receive the notice if that agent has either actual authority or apparent authority.

#### 1.  *FAM&M Insurance Company was Petitioners' Actual Agent*

To form an actual agency relationship, "one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Beesley's Point Sea-Doo*, 956 F. Supp. at 543. Authority to act as one's agent, and thereby accept the written notice, need not be explicitly stated, but rather, "can be inferred from the nature or extent of the function to be performed, the general course of conducting the business, or from the particular circumstances of the case." *Id.* (citation and quotation marks omitted).

In this case, Petitioners consented to have FAM&M act on their behalf as their agent when Petitioners hired FAM&M to insure their 1987 Wellcraft motorboat. As their insurance company, FAM&M was their agent with actual authority to receive and act upon any claim of damage or injury made involving this boat. Indeed, evidencing the existence of this agency relationship is that, in response to Claimant's December 8th letter to FAM&M, an insurance adjuster wrote back to Claimants on January 13, 2011. In that letter the adjuster described

7

Petitioners as "our insureds," denied liability on behalf of the Petitioners, and copied the Petitioners on the letter. *See* Exhibit 2. This illustrates that Petitioners had consented to having FAM&M act on their behalf. Thus, FAM&M was the actual agent of the Petitioners and was authorized to receive the December 8th written notice on their behalf. *See Stair*, 2008 A.M.C. at 872 ("the insurance company was an agent authorized to receive correspondence on behalf of the Plaintiff."); *Beesley's Point Sea-Doo*, 956 F. Supp. at 543 (insurance company had actual and apparent authority to receive notice).

### 2. *FAM&M Insurance Company was Petitioners' Apparent Agent*

Even if an actual agency relationship did not exist between Petitioners and their insurance company, FAM&M was cloaked in apparent authority to accept the written notice. "An agent has apparent authority when conduct by the principal leads a third party to believe that the agent has authorization to act on behalf of the principal." *Doxsee Sea Clam*, 13 F.3d at 553. The key to creating apparent authority is "verbal or other acts by the principal, of which the third party is aware, which reasonably give the appearance that the agent has authority to conduct a particular transaction." *Id.*

In this case, FAM&M is listed as Petitioners' insurance agent on the official State of Maryland Watercraft Accident Report. *See* Exhibit 3. FAM&M would only have appeared on the accident report as Petitioner's insurance agent if that name was supplied directly from the Petitioners. *See Beesley's Point Sea-Doo*, 956 F. Supp. at 543 ("First, a boating accident report . . . names Indemnity Casualty as [the owner's] insurer. . . . The name of the insurer could only have been supplied by [the owner]."). Claimants then became aware that Petitioners' listed FAM&M as their insurance agent, and thus, reasonably believed that FAM&M was authorized to act on Petitioners' behalf with regard to any claim arising from the accident. This is sufficient to

8

create an apparent agency—conduct of the Petitioners led the Claimants to believe that FAM&M was authorized to act on Petitioners behalf. Indeed, this was confirmed when, in response to the written notice, an insurance adjuster wrote back to Claimants stating that Petitioners were "our insureds," denying liability on behalf of the Petitioners, and copying the Petitioners on the letter. *See* Exhibit 2.

Thus, FAM&M was cloaked in apparent authority to act on behalf of Petitioners and receive the December 8th written notice of claim. *See In re Darin Alan, Inc.*, 2005 A.M.C. 328 (N.D. Cal. 2004) (insurance adjuster was apparent agent of owner authorized to accept notice); *Beesley's Point Sea-Doo*, 956 F. Supp. at 543 (same); *Doxsee Sea Clam*, 13 F.3d at 553 (same).

## CONCLUSION

For all the forgoing reasons, Claimants, Bernadette M. Jeandell, Ralph P. Short, Jr., and Cassandra L. Foster, respectfully request that this Court dismiss Petitioners Complaint as untimely filed and dissolve its order staying all other suits.

*[signature]*

PAUL D. BEKMAN
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS, L.L.C.
300 W. Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633

***Attorney for Claimants***

## **REQUEST FOR A HEARING**

Claimants respectfully request a hearing in this matter.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20TH day of September, 2013, a copy of the Claimants' Motion to Dismiss Complaint of J. Kenneth Geib and Mary F. Geib for Exoneration or Limitation of Liability was sent by first class mail, postage prepaid to:

Frank P. DeGiulio
190 N. Independence Mall West, Suite 401
Philadelphia, PA 19106

*Attorney for Petitioners*

_____
PAUL D. BEKMAN
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS, L.L.C.
300 W. Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633

*Attorney for Claimants*

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| COMPLAINT OF | * | Case No. 1:13-cv-2018-JFM |
| J. KENNETH GEIF AND MARY F. GEIB, | | |
| 341 Copley Drive | * | |
| Lancaster, Pennsylvania 17601 | | |
| FOR EXONERATION OR LIMIATION | * | In Admiralty |
| OF LIABILITY | | |

\* \* \* \* \* \* \* \* \* \* \*

## ORDER

Upon consideration of the Claimants' Motion to Dismiss Complaint of J. Kenneth Geib and Mary F. Geib for Exoneration or Limitation of Liability, and any opposition thereto, it is this

_____ day of _____, 2013

**ORDERED** that Claimants' motion is **granted**; and

**ORDERED** that Petitioners complaint be **dismissed**; and

**ORDERED** that this Court's stay of other suits is **dissolved**.

_____
United States District Judge